2022 IL App (2d) 210098
No. 2-21-0098
Opinion filed June 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE VILLAGE OF DOWNERS GROVE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-OV-5177 |
| | ) | |
| VILLAGE SQUARE III CONDOMINIUM | ) | |
| ASSOCIATION, | ) | Honorable |
| | ) | David E. Schwartz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Village Square III Condominium Association, appeals from the trial court's judgment finding it guilty of violating the Downers Grove Fire Prevention Code (Fire Prevention Code) (Downers Grove Municipal Code §§ 17.43 to 17.53 (amended Aug. 12, 2017)) and imposing on it an aggregate fine of $23,475, which consisted of a $75 fine for each of the 313 days plaintiff, the Village of Downers Grove (Village), alleged the violation continued after the proceedings commenced, plus costs. Defendant contends the court erred by (1) denying its motion to dismiss, (2) finding it guilty of the violation, and (3) imposing a daily fine. We reduce the fine imposed to $23,400 and otherwise affirm the trial court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3                  A. The Village Square Townhomes

¶ 4      This matter involves a multifamily residential townhome complex located on Winthrop Way in the Village. The townhome complex was built in 1970 or 1971 and, at the time, was in unincorporated Du Page County. The complex consists of three separate two-story buildings, two that contain 18 units and one that contains 12 units, for a total of 48 units. None of the units shares any common entrances/exits or hallways. Rather, each unit has its own separate entrance/exit at grade level.

¶ 5      Defendant is a condominium association organized (presumably) under the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2016)). Each unit is owned by an individual or family, and each unit owner is a member of defendant. Defendant's members elect a board of managers to manage defendant's affairs, and at all times relevant to this matter, Preston Straub, a longtime resident of the complex, served as president of the board.

¶ 6      In the 1990s, defendant, with the approval of its members, replaced its then-existing fire protection system, which Straub described at trial as "antiquated." According to Straub, he "made all the drawings and filed them with the County department to go with the permits that [defendant] obtained to put the system in." The new system was a supervised system of fixed temperature spot heat detectors, in which heat detectors in each unit were wired to a control unit outside of each building. Inspection and testing of the system required entry into each individual unit.

¶ 7      In 2012, the Village annexed the townhome complex, thus subjecting it to the Downers Grove Municipal Code.

¶ 8                  B. The Fire Prevention Code

¶ 9      In 2017, the Village amended the Fire Prevention Code, adopting the 2015 edition of the International Code Council International Fire Code (2015 International Fire Code) as amended by

section 17.45 of the Downers Grove Municipal Code. Downers Grove Municipal Code §§ 17.43, 17.45 (amended Aug. 12, 2017) (adopting 2015 Int'l Fire Code, as amended). For ease of reference, we will refer to the applicable provisions of the Fire Prevention Code by the section numbers used in the 2015 International Fire Code.

¶ 10                                C. The Citations

¶ 11    On December 22, 2017, the Village issued to defendant three citations, alleging that, on December 21, 2017, defendant failed "to provide an annual fire alarm inspection report" for each of its buildings, in violation of section 907.8 of the Fire Prevention Code (Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 907.8 (2015), as amended)). Section 907.8 and its related provisions, which we will refer to as the annual-testing requirement, require alarm users to hire a private contractor to annually test their fire protection systems and submit a report of the results to the Village. Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 907.8 (2015), as amended; deleting and replacing Int'l Fire Code § 907.8.2 (2015)); Downers Grove Municipal Code § 17.62 (amended Aug. 12, 2017). The Village attached to each citation an addendum that informed defendant that the Village was requesting the court to issue a penalty between $75 and $750 for each day the violation continued. On December 27, 2017, the Village filed the citations with the circuit court clerk, thus initiating the proceedings at issue.

¶ 12                           D. Defendant's Motion to Dismiss

¶ 13    Defendant moved to dismiss the citations under section 114-1(a)(6) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(6) (West 2018)), contending the trial court lacked jurisdiction. Defendant argued the court had the inherent authority to dismiss the citations because the Village had clearly denied its due-process rights by "fail[ing] to allow [d]efendant its right to

file a notice of appeal with the building official and with the [Building] Board of Appeals." On that point, defendant alleged that, on January 22, 2018, it appealed to the Downers Grove Building Board of Appeals (Building Board of Appeals), as permitted by the Fire Prevention Code, but the Building Board of Appeals denied defendant the opportunity to pursue the appeal, "stating that as this matter was already proceeding before [the court], Defendant could not proceed with the administrative remedies as provided in the Downers Grove Municipal Code." Thus, defendant maintained, the Village had violated its due-process rights by prohibiting it from "exercising [its] statutory appeal rights" and to allow the matter to proceed would result in "a miscarriage of justice" because it would "validate the Village's actions of violating Defendant's administrative remedies." Additionally, relying on *Camara v. Municipal Court of the City & County of San Francisco*, 387 U.S. 523 (1967), defendant contended the ordinance was "contrary to the Fourth Amendment in that it authorize[d] municipal officials to enter a private dwelling without a search warrant and without probable cause to believe that a violation of the *** Fire Prevention Code exist[ed], thereby violating Defendant's right to be secure from intrusion into personal privacy." (It is not clear how either basis for dismissal affected the court's jurisdiction. See 725 ILCS 5/114-1(a)(6) (West 2018) (allowing dismissal when trial court lacks jurisdiction).)

¶ 14     The court denied defendant's motion.[1] Preliminarily, the court noted there was a dispute as to whether the motion was brought under the proper statute. Defendant brought its motion under section 114-1(a)(6) of the Code of Criminal Procedure of 1963 (*id.*). The Village asserted the

---

[1]The record shows the court preprepared its remarks and announced its ruling in open court. The record contains no report of those proceedings, but the court filed a copy of its prepared remarks.

motion should have been brought under the Code of Civil Procedure (735 ILCS 5/1-101 *et seq.* (West 2018)), because, pursuant to Illinois Supreme Court Rule 571 (eff. Dec. 7, 2011), the Code of Civil Procedure applied to the proceedings. However, the court determined it could consider the motion regardless of which code defendant cited, because defendant's asserted basis for dismissal—the purported lack of jurisdiction—was a delineated basis for dismissal under both codes (725 ILCS 5/114-1(a)(6) (West 2018); 735 ILCS 5/2-619(a)(1) (West 2018)).

¶ 15    On the merits, the court noted that, in *Camara*, the United States Supreme Court "ruled that the defendant *** had a constitutional right to insist that the inspectors obtain a warrant to search and that the defendant [could] not constitutionally be convicted for refusing to consent to the inspection." It distinguished *Camara*, however, on the basis that defendant was "charged with Failing to Maintain Fire Protection System and *not* for refusing to permit an inspection." (Emphasis in original.) Further, the court noted, it was not aware of any case law that permitted dismissal of charges based on a fourth-amendment violation. With respect to defendant's due-process argument, the court reasoned that defendant had not pointed to any code section that required the Village to first issue a warning or an administrative decision before filing an ordinance-violation proceeding in court. Therefore, the court determined, it did not lack jurisdiction. Further, it found the failure to permit defendant to first proceed administratively did not deprive defendant of its due-process rights, because defendant was "going to have due process by having [its] trial heard if [it] so wishe[d]," where it could assert defenses to the citations.

¶ 16    Defendant moved to reconsider the ruling, reiterating its due-process argument and arguing the court misconstrued *Camara*. The court denied the motion.

¶ 17                                    E. Bench Trial

¶ 18                    1. *The Village's Case: Deputy Fire Chief Christopher Hull*

¶ 19 Deputy Fire Chief Christopher Hull testified he was ultimately responsible for the inspection of existing buildings and the maintenance of fire protection systems throughout the Village. He explained the Fire Prevention Code required annual inspections "[t]o verify that [a fire protection system is] functioning properly according to the way that [it is] designed and installed." The Village does not conduct these inspections. Rather, each building owner or representative is responsible for hiring a state-licensed inspector to conduct the inspection. Once testing is complete, the inspector submits an inspection report to the Village through a third-party reporting system, and the Village then ensures that any deficiency identified in the report is corrected.

¶ 20 According to Hull, the 1967 Du Page County Building Code applied to the construction of the townhomes and, at the time, required each building constructed to have a fire alarm system that protected the whole building. However, the Fire Prevention Code (*i.e.*, the 2015 International Fire Code, as amended) governed the ongoing testing and maintenance of the system after the Village annexed the townhomes. The Fire Prevention Code required annual testing of 100% of the devices at the townhome complex.

¶ 21 The relevant annual inspection report for the townhomes was due in March 2017. Defendant, however, failed to submit the report. When the report was 37 days overdue, defendant received an automatic notice from the third-party reporting system. Typically, after an automatic notice is issued to a party, the Village issues a notice of violation and, after the Village's notice, the Village issues a citation. Hull testified defendant should have received a notice of violation but he would have to check the fire department's records. By July 2017, defendant still had not submitted the report. Thus, in July 2017, the Village issued tickets, but to the wrong party. In December 2017, it reissued the tickets to defendant.

¶ 22 Hull also testified that he was aware the Fire Prevention Code contained a provision that

allowed an aggrieved party to administratively appeal an adverse decision to the Downers Grove Building Board of Appeals before a citation was issued. He confirmed defendant "had the right to go before the *** Building Board of Appeals to appeal [the notice of violation]." He also agreed that defendant attempted to initiate an administrative appeal but the Building Board of Appeals did not consider the appeal because defendant was "already involved in the court system at the time when [it] applied to be before the Board of Appeals."

¶ 23    Defense counsel asked Hull how the townhomes were classified for purposes of Chapter 9 of the Fire Prevention Code. Hull testified the townhomes were not classified as "Residential Group R-2" but, rather, fit more closely with "Residential Group R-3." Hull also testified that firewalls separated each unit.

¶ 24                         2. *Defendant's Case: Straub*

¶ 25    Straub testified that defendant's position was that it was exempt from the annual-testing requirement, which was one of the reasons it did not submit the required report. Additionally, it had previously had difficulty obtaining permission to access each unit for the inspection. Straub explained defendant did not have a master key that allowed access to each unit. Therefore, each unit owner had to approve entry into his or her unit.

¶ 26    In 2016, the Village issued to defendant citations (docketed as case No. 16-OV-3324). Straub did not know whether those citations were based on defendant's failure to submit the report but recalled that, in 2016, defendant's chosen inspector could not gain access to six of the units. (After the parties rested, during a discussion with the court, Straub stated it "was a big headache" to obtain the unit owners' permission to enter the units.) Additionally, some of the unit owners had painted over the heat detectors, so those had to be replaced. Defendant was ultimately found guilty and fined for the 2016 violations.

¶ 27                            3. *The Parties' Arguments*

¶ 28    The Village argued section 907.8.2 of the Fire Prevention Code required that fire alarm systems be tested annually and that each of defendant's three buildings had fire alarm systems that were installed when the buildings were constructed, in accord with the 1967 National Building Code, as adopted and amended by the Du Page County Board. The Village asserted that, because defendant's buildings had approved fire alarm systems, they were required to comply with the annual-testing requirement. The Village also asserted defendant failed to prove it was exempt from the annual-reporting requirement. It argued section 907.2 of the Fire Prevention Code (Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 907.2 (2015), as amended)), on which defendant relied to establish its exemption, was inapplicable to defendant's buildings, because it applied only to new buildings. The Village maintained that, even though defendant's fire alarm system did not meet the building standards of the 2015 International Fire Code, it did not have to upgrade its system, because the system was "grandfathered." However, the Village asserted, defendant also could not downgrade its system. Nevertheless, defendant was required to submit its fire alarm systems to annual tests because the annual-testing requirement was applicable to existing structures.

¶ 29    Defendant argued that it was not required to have a fire alarm system. Defendant maintained its buildings were classified as "Residential Group R-2" structures and, because each unit was separated by a firewall and had its own exit at grade level, it was exempt, under the Fire Prevention Code, from having any fire alarm system. Further, because it was exempt from having a fire alarm system, it was also exempt from annually inspecting its existing system. Defendant also reiterated the fourth amendment and due-process clause arguments it made in its motion to dismiss.

¶ 30                          4. *The Court's Findings*

¶ 31    On June 26, 2019, the trial court found defendant guilty of the violation. The court determined the record established defendant's buildings had appropriate firewalls, there were no common areas, and each unit had its own exits and, because defendant had an existing, approved fire alarm system, it was not required to install a new system that complied with the current Fire Prevention Code. Regardless, because it had an existing, approved system, it was obligated to comply with the annual-testing requirement.

¶ 32    The court stayed the imposition of any fine or penalty for the violation for 120 days, to allow defendant to complete an inspection and file a report. In the event defendant complied in that timeframe, the court would waive any fines and costs.

¶ 33                          F. Subsequent Proceedings

¶ 34    Defendant moved to reconsider, contending the Village failed to "prove [defendant] guilty of the charges *** beyond all reasonable doubt." Specifically, defendant argued the evidence presented at trial demonstrated, and the court found, its buildings were not required to have fire protection systems under the Fire Prevention Code. It noted that, under section 901.6 of the Fire Prevention Code (Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 901.6 (2015), as amended)), nonrequired fire protection systems must be either "inspected, tested and maintained or removed." Defendant nevertheless argued that inspections were required only on required fire protection systems. Further, defendant maintained it was not only exempt from having any fire alarm systems, but also it could remove its existing system.

¶ 35    On August 28, 2019, the court denied the motion, stating it "still read the [Fire Prevention Code] the same way, [*i.e.*,] that once there's a fire protection system in place, the Village is entitled to have the annual inspections." The written order entered that day stated, "Compliance to be

completed by [October 31, 2019,] pursuant to previous ruling to stand."

¶ 36    On September 26, 2019, defendant filed a notice of appeal but later moved in this court to voluntarily dismiss the appeal, recognizing, in part, the order it appealed from, *i.e.*, the August 2019 order denying its motion to reconsider, was not a final order. On July 6, 2020, we granted the motion.

¶ 37    In the meantime, on October 30, 2019, while defendant's appeal was pending in this court, the trial court held a status hearing on the issue of defendant's compliance with the annual-testing requirement. (The record contains no report of proceedings from the hearing.) The court entered a written order, imposing an aggregate $1500 fine ($500 fine for each count), plus costs. The order also stated payment was stayed pending the appeal and set a status date of April 22, 2020.

¶ 38    On November 27, 2019, the Village moved to reconsider or clarify the order. It contended the Fire Prevention Code and the Downers Grove Municipal Code required the court to enter a fine for each day the violation continued after the citations were issued. According to the Village, 313 days elapsed between the date the citations were issued (December 21, 2017) and the date defendant was found guilty (October 29, 2018). (Our calculation shows it was only 312 days.) The Village also sought clarification of the court's order regarding compliance with the annual-testing requirement. It asserted the court, in its June 26, 2019, order, ordered defendant to come into compliance with the annual-testing requirement and asked that it be permitted to enforce that order while the appeal was pending.

¶ 39    Defendant responded that the Fire Prevention Code and the Downers Grove Municipal Code did not *require* the court to enter a daily fine. Rather, it contended, the codes permitted the Village "to file numerous complaints or tickets against a defendant for each and every day the defendant is allegedly in violation of the Downers Grove Municipal Code, which the Village ***

did not do in this matter against Defendant." And without separate notices for each day, defendant argued, the court lacked the authority to impose a daily fine. As to compliance, defendant argued the court did not have the authority to compel its compliance with the annual-testing requirement.

¶ 40    At the February 26, 2020, hearing on the Village's motion, the court vacated its October 30, 2019, order (imposing the aggregate fine of $1500, plus costs) and placed the matter on inactive status due to defendant's pending appeal.

¶ 41    In July 2020, this court having issued its mandate following the voluntary dismissal of plaintiff's appeal, the matter reconvened for a status hearing on August 5, 2020. The trial court ultimately continued the matter to November 18, 2020, for "sentencing."

¶ 42    At the November 18, 2020, hearing, the trial court noted it had vacated its October 30, 2019, order because it believed it lost jurisdiction over the matter when defendant appealed.[2] The court ultimately found it was required to assess a daily fine and imposed an aggregate fine of $23,475, which consisted of $75 per day for each of the 313 days between December 21, 2017,

---

[2]The trial court did not lose jurisdiction when defendant filed its first notice of appeal. Because no fine had been imposed at that time, the court had not entered a final judgment. See *In re Marriage of Schwieger*, 379 Ill. App. 3d 687, 689 (2008). Thus, defendant's first notice of appeal was ineffective and did not divest the court of its jurisdiction to enter the October 30, 2019, order imposing the $1500 fine. *In re Marriage of Gutman*, 232 Ill. 2d 145, 156 (2008). The judgment became final when the court imposed the $1500 fine. The Village timely moved to reconsider that order. Therefore, the court had jurisdiction to vacate that order, even if it did so based on its erroneous belief that it had lost jurisdiction. See *Welch v. Ro-Mark, Inc.*, 79 Ill. App. 3d 652, 657 (1979).

and October 29, 2018. (Again, our calculation shows it was only 312 days.) The court stayed payment of the fines until January 27, 2021, and continued the matter so that Straub could talk with the unit owners about how to proceed. The court declined to order defendant to comply with the annual-testing requirement, determining that it had no authority to do so.

¶ 43    On January 27, 2021, the court vacated the stay, and this appeal followed.

¶ 44                                II. ANALYSIS

¶ 45    On appeal, defendant contends the trial court erred by (1) denying its motion to dismiss, (2) finding it guilty of the violation, and (3) imposing a daily fine.

¶ 46                                A. Forfeiture

¶ 47    As an initial matter, the Village argues defendant forfeited review of the orders denying defendant's motions to reconsider, because it failed to offer substantive argument in support of those contentions. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a party's brief to present argument, which must contain the contentions of the party and be supported by citation to the authority and the pages of the record relied on. A party must clearly define the issues to be decided and set forth cogent arguments in support of his or her position. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 50. A party forfeits an argument when he or she fails to adequately develop it. *Id.*

¶ 48    As the Village points out, defendant offers nothing more than a bare assertion that it was error to deny its motions to reconsider. Ordinarily, we would be inclined to find defendant forfeited review of the trial court's decisions on those motions. See *id.* But even if we were to determine defendant forfeited review of the denials of its motions to reconsider, such a determination would have little practical effect. Indeed, defendant's motions to reconsider contended the trial court erred in its initial application of the law and they essentially raised the same arguments advanced in its

motion to dismiss, in its summation after trial, and on appeal. The Village does not contend those arguments are not otherwise properly presented. Under these circumstances, we decline to conclude defendant forfeited review of the denials of the motions to reconsider.

¶ 49                                    B. Finding of Guilt

¶ 50    Because it will better frame our discussion of defendant's motion to dismiss, we first address defendant's contention that the trial court erred by finding the annual-testing requirement was applicable to defendant's buildings.

¶ 51    Defendant's contention requires us to construe the Fire Prevention Code, which is a question of law, subject to *de novo* review. *Saladrigas v. City of O'Fallon*, 2020 IL App (5th) 190466, ¶ 19. When construing a municipal ordinance, we apply the familiar canons of statutory construction. *Id.* Thus, our primary concern is to ascertain and effect the legislator's intent, the best indicator of which is the language of the ordinance given its plain and ordinary meaning. *Id.* Further, we must view the enactment as a whole and interpret it in light of all relevant provisions. *Id.*

¶ 52    Section 907.8 of the Fire Prevention Code states as follows:

"The maintenance and testing schedules and procedures for fire alarm and fire detection systems shall be in accordance with Sections 907.8.1 through 907.8.5 and NFPA 72 [National Fire Alarm and Signaling Code]. Records of inspection, testing[,] and maintenance shall be maintained. Records of inspection, testing[,] and maintenance shall be submitted to the Fire Prevention Bureau in an approved manner. Annual testing of fire alarm systems shall include 100% of all devices." Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 907.8 (2015), as amended).

Section 907.8.2 of the Fire Prevention Code states that "[c]omplete and satisfactory tests shall be

performed on all devices in accordance with Chapter 17, Article VI of the Downers Grove Municipal Code [(Alarm Code) (Downers Grove Municipal Code §§ 17.54 to 17.74 (amended Aug. 12, 2017))]." Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (deleting and replacing Int'l Fire Code § 907.8.2 (2015)).

¶ 53    Section 17.62(b) of the Alarm Code provides that "any fire Alarm System and all devices [shall be] tested annually by a licensed testing agency or licensed electrical contractor." Downers Grove Municipal Code § 17.62(b) (amended Aug. 12, 2017). It also states:

> "The results of the testing agency or electrical contractors test shall be in writing, signed by the agency or contractor, and kept on file at the premises where the Alarm System is being used. A copy of the test results shall be submitted to the Village as directed by the Fire Alarm Coordinator in an approved manner through a third party company upon completion of the Alarm System test. Tests shall not be considered completed until the Village receives the written results thereof." Downers Grove Municipal Code § 17.62(b)(2) (amended Aug. 12, 2017).

¶ 54    Thus, this scheme, if applicable, requires the user of a fire protection system to hire a licensed testing agency or electrical contractor to annually test the system and submit a report of the testing results to the Village in an approved manner.

¶ 55    Defendant contends the trial court erred by finding the annual-testing requirement was applicable to defendant's buildings, for two reasons: (1) the Fire Prevention Code, in general, "do[es] not apply to residential buildings like those of the defendant" and, (2) if the Fire Prevention Code does generally apply, defendant is not subject to the annual-testing requirement because its buildings are not required to have a fire protection system at all.

¶ 56    Reading the Fire Prevention Code as a whole, we conclude the trial court correctly determined that defendant was subject to the annual-testing requirement. As the trial court found, even if a building is not required by the Fire Prevention Code or some other code to have a fire protection system, once an approved fire protection system is in place, the Fire Prevention Code requires the system to be tested annually and a report to be submitted to the Village.

¶ 57    Chapter 9 of the Fire Prevention Code makes it clear that its annual-testing requirement applies to *all* approved fire protection systems, even if a building is not required by the Fire Prevention Code or some other code to have a fire protection system. Section 901.1 of the Fire Prevention Code states, "[t]he provisions of this chapter [9] shall specify where fire protection systems are required and shall apply to the design, installation, inspection, operation, *testing*[,] and maintenance of *all* fire protection systems." (Emphases added.) Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 901.1 (2015), as amended). Additionally, section 901.6 of the Fire Prevention Code states that "[n]onrequired fire protection systems *** shall be inspected, tested[,] and maintained or removed." Downers Grove Municipal Code § 17.43 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 901.6 (2015)). Thus, the language of these provisions clearly evidences an intent to require all fire protection systems, including those that are not required, to be tested annually.

¶ 58    Defendant argues that "any applicable provisions within the [2015 International Fire Code] or the [Fire Prevention Code] do not apply to residential buildings like those of the defendant." According to defendant, its buildings contain single-family residences, and the Fire Prevention Code "largely exempts residences" and instead focuses on commercial buildings. We disagree.

¶ 59    Section 102 of the Fire Prevention Code defines its scope. Pertinent here, section 102.2 states the administrative, operational, and maintenance provisions of the code apply to "[e]xisting

conditions and operations." Downers Grove Municipal Code § 17.43 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 102.2 (2015)). This provision contains no distinction between commercial and residential properties, and defendant cites no provision in the Fire Prevention Code that generally exempts residential buildings from its purview. Given the Fire Prevention Code's broad statement that its administrative, operational, and maintenance provisions apply to existing buildings, we reject defendant's assertion that the Fire Prevention Code does not, in general, apply to residential buildings.

¶ 60    Defendant also argues that it is exempt, under section 907.2.9 of the 2015 International Fire Code, from having any fire protection system. Int'l Fire Code § 907.2.9 (2015). Section 907.2.9 of the 2015 International Fire Code states that fire alarm systems and smoke alarms must be installed in Group R-2 occupancies, except that fire alarm systems are not required

> "in buildings not more than two stories in height where all dwelling units *** and contiguous attic and crawl spaces are separated from each other and public or common areas by not less than 1-hour fire partitions and each *** unit has an exit directly to a public way, egress court[,] or yard."  Int'l Fire Code § 907.2.9.1 (2015).

According to defendant, its buildings most closely fit within the Group R-2 residential classification and the evidence at trial established, and the court found, that its buildings were not more than two stories in height and that each unit was separated by appropriate firewalls and had its own entrance/exit at grade level. Defendant maintains that, because it was exempt from having any fire protection system, it could not be required to comply with the annual-testing requirement.

¶ 61    We reject defendant's argument that it is exempt from the annual-testing requirement, for three reasons. First, when the Village adopted the current version of the Fire Prevention Code (by incorporating the 2015 International Fire Code), it deleted section 907.2.9. Downers Grove

Municipal Code § 17.45 (amended Aug. 12, 2017) (deleting Int'l Fire Code § 907.2.9 (2015) from the Fire Protection Code). Thus, the sole authority for defendant's assertion does not exist.

¶ 62    Second, section 907.1 of the Fire Prevention Code states that section 907.2 (which included section 907.2.9) applies only to *new* buildings and section 907.9 applies only to *existing* buildings. Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 907.1 (2015), as amended). Otherwise, section 907 applies generally to all new and existing buildings. Thus, even if section 907.2.9 had not been deleted, section 907.2.9 would not apply, because the townhomes existed when the Fire Prevention Code was adopted.

¶ 63    Third, even if defendant were exempt from having a fire protection system under section 907.2.9, it nevertheless had an approved fire alarm system in place. As discussed above, the Fire Prevention Code makes it clear that all fire protection systems, even those that are not required, must be tested annually.[3] Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (adopting Int'l Fire Code §§ 901.1, 901.6, 907.8, 907.8.2 (2015), as amended).

¶ 64    Defendant also notes testing cannot be performed remotely from outside the units but, rather, requires access to each individual unit. According to defendant, it must receive prior permission to access each unit, which had in the past proved to be "a lengthy if nigh impossible task." Therefore, defendant argues, even if the annual-testing requirement was applicable to

---

[3]Defendant's claimed exemption from the annual-testing requirement is based on the removal of its existing fire protection system. Nothing in the record indicates defendant has removed its system. An exemption based upon a status not yet achieved is an exemption not yet perfected. We note, in the trial court, defendant asserted it could remove its existing fire protection system but abandoned that claim on appeal.

defendant's buildings, "the [V]illage is requiring the impossible, and seeks fining the impossible on a day-by-day basis."

¶ 65    We reject this argument. It is better addressed to the Village council, which has the authority to change the Fire Prevention Code. We, on the other hand, must apply the ordinance as written. See, *e.g.*, *People v. Barker*, 2021 IL App (1st) 192588, ¶ 70. Thus, we cannot find the ordinance inapplicable to defendant merely because it is purportedly difficult for defendant to attain compliance.

¶ 66    In this case, there is no dispute that defendant removed its original fire protection system and installed a new, approved fire protection system in the 1990s. Thus, defendant was required to test its fire protection system annually and submit the required report. There is likewise no dispute that defendant never submitted the required report, and therefore the trial court correctly found defendant guilty of the violation.

¶ 67                            C. Motion to Dismiss

¶ 68    Defendant next contends the trial court should have granted its motion to dismiss the citations. Specifically, defendant argues the annual-testing requirement violated the fourth amendment and the Village's failure to allow it to administratively appeal violated its due-process rights. We are not persuaded.

¶ 69                            1. *Standard of Review*

¶ 70    Initially, we note defendant's brief is devoid of any discussion of the standards of review applicable to a motion to dismiss. In the trial court, defendant moved to dismiss under section 114-1(a)(6) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(6) (West 2018)). As the trial court recognized, this was incorrect. Ordinance violation proceedings are quasi-criminal in nature but are "tried and reviewed as a civil proceeding." *Village of Plainfield v. American Cedar*

*Designs, Inc.*, 316 Ill. App. 3d 130, 135 (2000). Indeed, when, as here, the violation of an ordinance does not carry the possibility of a jail term, the Code of Civil Procedure applies. Ill. S. Ct. Rs. 570, 571 (eff. Dec. 7, 2011).

¶ 71    We review *de novo* dismissals under the Code of Civil Procedure. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007); 735 ILCS 5/2-615, 2-619 (West 2018). We also review *de novo* whether a party's constitutional rights have been violated. *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 57.

¶ 72                                    2. *Fourth Amendment*

¶ 73    Defendant first argues the annual-testing requirement violates its members' fourth amendment right to be free from unreasonable searches. We disagree.

¶ 74    The fourth amendment protects an individual's right to be free from unreasonable searches, and its basic purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara*, 387 U.S. at 528; see U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6 (Illinois counterpart to fourth amendment). "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." (Internal quotation marks omitted.) *Camara*, 387 U.S. at 528-29. " 'A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.' " *People v. Bartelt*, 241 Ill. 2d 217, 226 (2011) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

¶ 75    Initially, the Village argues that, as a matter of law, defendant does not have standing to raise the fourth amendment claim. In support, it cites the well-settled principle that fourth amendment rights are purely personal and may not be vicariously asserted. See, *e.g.*, *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 48. We reject this argument.

¶ 76    Defendant is a condominium association whose members, *i.e.*, the individual unit owners, have submitted their property to the Condominium Property Act. Section 9.1 of the Condominium Property Act provides that a condominium association's "board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or *more than one unit*, on behalf of the unit owners, as their interests may appear." (Emphasis added.) 765 ILCS 605/9.1 (West 2016); see *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 75 (noting "it is clear that a condominium association generally has standing to pursue claims that affect the unit owners or the common elements"). Here, the ordinance at issue affects all unit owners in the association. Accordingly, we find defendant has standing to assert the fourth amendment claim.

¶ 77    In *Camara*, the Supreme Court considered a facial challenge to a municipal ordinance that allowed authorized city employees, upon presentation of proper credentials, "to enter, at reasonable times, any building, structure, or premises in the City to perform any duty" required of them by the city code. (Internal quotation marks omitted.) *Camara*, 387 U.S. at 526. The Court held the ordinance violated the fourth amendment because it did not contain a warrant procedure. *Id.* at 534.

¶ 78    We conclude the annual-testing requirement does not implicate the fourth amendment as it concerns defendant and its members. First, we note *Camara* is distinguishable. There, the ordinance at issue required the occupant of any building, structure, or premises to allow *a city official* to enter a premises to perform *any* duty required of them by the city code. *Id.* at 526. Thus, as the Court recognized, occupants were left to the discretion of the city officials in the field. *Id.* at 532-33. Here, on the other hand, the ordinance at issue requires a property owner to allow *a private, licensed contractor* (of its choosing from an approved list) to enter a premises for the

*limited purposes* of testing the components of the fire protection system and reporting the results to the Village.

¶ 79    Thus, there is a fair question as to whether the fourth amendment is even applicable, because the ordinance does not authorize a government official to physically enter each unit. It is well settled that the fourth amendment does not apply to private actors unless, under the totality of the circumstances, it can be said that the private actor is acting as an agent or instrument of the government. *People v. Heflin*, 71 Ill. 2d 525, 539 (1978). But we need not answer that question, because this issue may be resolved on a different basis.

¶ 80    Again, defendant is a condominium association and its members have submitted their property to the Condominium Property Act. Under Illinois law, condominiums are creatures of statute and the rights of condominium owners are to be addressed with primary reliance on the Condominium Property Act. *Schaumburg State Bank v. Bank of Wheaton*, 197 Ill. App. 3d 713, 718-19 (1990). As another court has commented,

> "It appears to us that inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he [or she] might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization." *Hidden Harbour Estates, Inc. v. Norman*, 309 So. 2d 180, 181-82 (Fla. Dist. Ct. App. 1975).

This court has cited *Hidden Harbour* with approval, noting a condominium unit owner cedes some degree of freedom of choice and agrees to subordinate some of his or her traditional ownership

rights when he or she elects this type of ownership. *Schaumburg State Bank*, 197 Ill. App. 3d at 718-19.

¶ 81 One such right defendant's members have ceded is the right to refuse entry of the board of managers and its agents for the purpose of maintaining the common elements of the buildings. Under section 18.4(j) of the Condominium Property Act, defendant's board of managers has the right "[t]o have access to each unit from time to time as may be necessary for the *maintenance*, repair[,] or replacement of any common elements." 765 ILCS 605/18.4(j) (West 2016).

¶ 82 In light of section 18.4(j) of the Condominium Property Act and under these circumstances, we find the fourth amendment is not implicated in the present case. Defendant's members had no legitimate expectation in keeping a contractor, selected by defendant's board, from entering their units for the limited purpose of testing the fire protection system. See *Bartelt*, 241 Ill. 2d at 226. Indeed, regular testing and inspection are integral parts of the maintenance of any system, as they allow problems to be identified and corrected.

¶ 83                                   3. *Due Process*

¶ 84 Defendant also argues the citations should have been dismissed because the Village initiated court proceedings without allowing defendant to avail itself of the administrative appeal procedures contained in the Fire Prevention Code, in violation of its due-process rights.

¶ 85 The due-process clauses of the United States and Illinois Constitutions preclude the government from depriving a person of life, liberty, or property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. "Procedural due process is meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty[,] or property." *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 434 (2000). Thus, generally, the right to due process includes the right to notice and an opportunity to be heard *before* a person is

deprived of property. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993). The opportunity to be heard must be afforded "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). " 'Due process of law is served where there is a right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered.' " *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 570 (2010) (quoting *Piotrowski v. State Police Merit Board*, 85 Ill. App. 3d 369, 373 (1980)).

¶ 86　We conclude the trial court properly rejected defendant's due-process claim. Here, defendant received notice of the violation and was afforded a full-blown trial at which it was permitted to present evidence, cross-examine the Village's sole witness, and argue why it could and should not be found guilty of the violation, all before it was deprived of its property (when the fine was imposed). See *id.*

¶ 87　Defendant nevertheless argues its due-process rights were infringed because it had a clear right of review before the Building Board of Appeals. Defendant relies on section 108.1 of the Fire Prevention Code, which states that a "person aggrieved by any decision or interpretation of the fire official made under the provisions of this Code may take an appeal to the Building Board of Appeals in accordance with the procedures prescribed in Chapter 7, Article IX of the Downers Grove Municipal Code." Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (deleting and replacing Int'l Fire Code § 108.1 (2015), as amended). An appeal to the Building Board of Appeals must be commenced within 30 days of the date of the decision being appealed. Downers Grove Municipal Code § 7.901(f)(2) (adopted Oct. 6, 2009).

¶ 88　It is not clear, however, that defendant timely availed itself of the administrative appeal procedure. In its motion to dismiss, defendant alleged it filed a notice with the Building Board of

Appeals on January 22, 2018, *after* the citations were issued and *after* the ordinance-violation proceedings were commenced in the trial court. However, the annual test of defendant's system was due to be completed in March 2017, and defendant twice received notice that it was not in compliance with the annual-testing requirement *before* the citations were issued and the ordinance-violation proceedings were commenced. Indeed, defendant first received an automatic notice from the third-party reporting system when the report was 37 days overdue and thereafter received a separate notice from the Village. It seems, then, that the time to file its notice of appeal under the administrative appeal procedure did not commence when the citations were issued on December 21, 2017, but, rather, when it received the automatic notice (at the earliest) and the Village's separate notice (at the latest). Thus, though defendant appealed to the Building Board of Appeals within 30 days of the date the citations were issued, it is not clear defendant actually complied with the time requirements for an administrative appeal.

¶ 89    In any event, we also note that the Fire Prevention Code does not require the Village to issue a notice of violation before proceeding with ordinance-violation proceedings in the trial court. To be sure, the fire code official (here, Deputy Chief Hull) "is authorized to prepare a written notice of violation" when he or she determines a person has violated the Fire Prevention Code (Downers Grove Municipal Code § 17.43 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 109.3 (2015)) and "is authorized to request" the Village attorney to initiate legal proceedings if a notice of violation is not corrected (Downers Grove Municipal Code § 17.43 (amended Aug. 12, 2017) (adopting Int'l Fire Code § 109.3.3 (2015)). However, section 1.18 of the Downers Grove Municipal Code also states, without regard to the administrative appeal procedure, that the Village may commence in the circuit court a prosecution for the violation of any Village ordinance. Downers Grove Municipal Code § 1.18 (1925). Further, the Village is a home rule municipality,

and "[t]he adoption by a [home rule] municipality of a system of administrative adjudication *does not preclude the municipality from using other methods to enforce municipal ordinances*." (Emphasis added.) 65 ILCS 5/1-2.1-3 (West 2018). Thus, the existence of the administrative appeal procedure did not preclude the Village from using another method, *i.e.*, ordinance-violation proceedings, to enforce compliance with the annual-testing requirement.

¶ 90    Defendant also argues it should have been permitted to administratively appeal the Village's decision to issue the citations, because the Building Board of Appeals "would have proper and superior knowledge of fire alarm system requirements in the village." We are not persuaded.

¶ 91    The alleged violation here did not require any specialized knowledge of building requirements or fire protection systems. It required merely a straightforward determination of whether defendant failed to have a licensed contractor test its existing system and submit a report of the results during the applicable timeframe. Thus, we see no reason why the Building Board of Appeals would be better equipped than the trial court to consider the alleged violation.

¶ 92    Moreover, the sole authority offered by defendant, *Redwood v. Lierman*, 331 Ill. App. 3d 1073 (2002), does not support its argument. The court in *Redwood* did not hold that a party has a due-process right to administratively appeal the decision to commence ordinance-violation proceedings during which the party receives a full-blown trial before any potential deprivation of property occurs. Rather, it merely applied the well-settled principle that a party is entitled to notice and a hearing before he or she is deprived of property. In that case, the court found the removal of a van from the plaintiffs' property *before* a hearing on the van's operability was held violated the plaintiffs' due-process rights. *Id.* at 1085-86.

¶ 93 Finally, we reject defendant's argument, raised for the first time in its reply brief, that it should have been permitted to exhaust its administrative remedies before being haled into court. Arguments may not be raised for the first time in a reply brief. Ill. S. Ct. R. 341(h)(7) (Oct. 1, 2020). Accordingly, defendant has forfeited this argument.

¶ 94                                D. Daily Fine

¶ 95 Defendant's final contention is that the trial court erred when it imposed a daily fine. Defendant argues that, under section 109.4 of the Fire Prevention Code (Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (deleting and replacing Int'l Fire Code § 109.4 (2015), as amended)), the court could not impose daily fines unless the Village gave a separate notice for each day included in the fine. It essentially maintains that the Village was required to initiate separate court proceedings for each day it sought a fine. Defendant also argues that, given the court's and the parties' preference that the matter would be resolved without resorting to fines, the $23,475 fine imposed here was "both logically incongruous and highly prejudicial." We reject defendant's arguments.

¶ 96 Defendant's contention requires us to construe the Fire Prevention Code and the Downers Grove Municipal Code. Again, this is a question of law, subject to *de novo* review. *Saladrigas*, 2020 IL App (5th) 190466, ¶ 19.

¶ 97 Section 109.4 of the Fire Prevention Code states as follows:

> "Any person, firm[,] or corporation violating any of the provisions of th[is] code or failing to comply with any order issued pursuant to any section thereof shall be guilty of a petty offense, and upon conviction thereof shall be punished as provided in *** Section 1.15 of the Downers Grove Municipal Code. Each day that a violation continues, after a service of notice as provided for in this Code, shall be deemed a separate offense." Downers

Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (deleting and replacing 2015 Int'l Fire Code § 109.4 (2015), as amended).

Section 1.15 of the Downers Grove Municipal Code states, in pertinent part, as follows:

"(a) Any person violating any of the provisions or failing to comply with any of the mandatory requirements of the ordinances of the Village shall be guilty of an offense. Except in cases where a different penalty is prescribed by any ordinance of the Village, any person who *** is found guilty of an offense under the ordinances of Downers Grove shall be punished by a fine of not less than [$75] nor more than [$750].

(b) Any person shall be guilty of a separate offense for each and every day during any portion of which any violation of any provision of the ordinances of the Village is committed, continued[,] or permitted by any such person, and he [or she] shall be punished accordingly." Downers Grove Municipal Code § 1.15(a), (b) (adopted Aug. 21, 2012).

¶ 98　　Defendant argues that section 109.4 of the Fire Prevention Code requires the Village to serve a separate notice for each day that the daily fine was imposed. To support its position, defendant relies on the second sentence of section 109.4, which states, "Each day that a violation continues, after a service of notice as provided for in this Code, shall be deemed a separate offense." Downers Grove Municipal Code § 17.45 (amended Aug. 12, 2017) (deleting and replacing Int'l Fire Code § 109.4 (2015), as amended). Relatedly, defendant asserts the trial court erred when it turned to section 1.15 of the Downers Grove Municipal Code for the proposition that the Village had expressed its intent to impose daily fines without separate notices for violators of the Fire Prevention Code. Defendant points to the sentence in section 1.15 that states, "Except in cases where a different penalty is prescribed by any ordinance of the Village, any person who *** is found guilty of an offense under the ordinances of Downers Grove shall be punished by a fine

of not less than [$75] nor more than [$750]." Downers Grove Municipal Code § 1.15(a) (adopted Aug. 21, 2012). It argues section 109.4 of the Fire Prevention Code prescribes a penalty for its violation and, because section 1.15 of the Downers Grove Municipal Code states it does not apply when a different penalty is prescribed, the trial court erred by relying on it.

¶ 99    We conclude the trial court correctly determined it was required to impose a daily fine for each day defendant failed to submit the testing report, after December 21, 2017. Initially, we reject defendant's argument that the trial court erred by relying on section 1.15 of the Downers Grove Municipal Code in its analysis. We do not necessarily disagree that section 109.4 of the Fire Prevention Code prescribes a penalty for violations of the code. But it does so by expressly incorporating the general penalty provisions contained in section 1.15 of the Downers Grove Municipal Code, and it certainly does not prescribe a *different* penalty than that set forth in section 1.15. Thus, the court correctly referenced section 1.15 in its analysis.

¶ 100   When read together, section 109.4 of the Fire Prevention Code and section 1.15 of the Downers Grove Municipal Code make it clear the Village intended to require only a single notice of violation before a daily fine could be imposed. Indeed, nothing in section 109.4 of the Fire Prevention Code indicates a separate notice of violation is required for each day the Village seeks a fine. To the contrary, section 109.4 refers to a *single* notice and states that a violator is guilty of a separate offense for each day the violator allows the violation to *continue* after receipt of that notice. In turn, section 1.15 of the Downers Grove Municipal Code sets forth the penalty for each offense—a fine of at least $75 and at most $750. Downers Grove Municipal Code § 1.15(a) (adopted Aug. 21, 2012). And, consistent with section 109.4 of the Fire Prevention Code, section 1.15 also provides that a violator is guilty of "a separate offense for each and every day" the violator allows a violation to continue and "shall be punished accordingly." Downers Grove

Municipal Code § 1.15(b) (adopted Aug. 21, 2012). Thus, under this legislative scheme, a notice of violation starts the clock for the imposition of daily fines, and a violator who allows a violation to continue, after receipt of that notice, is subject to a daily fine of at least $75 and at most $750. To conclude that a daily fine cannot be imposed absent a separate notice for each day would require this court to read into the ordinances a condition that the Village did not include. We will not do so. *People v. Burge*, 2021 IL 125642, ¶ 20.

¶ 101   Further, we note the Village attached to each citation an addendum that informed defendant that it was subject to a separate fine between $75 and $750 for each day the violation continued. Thus, contrary to defendant's assertion, it had actual notice that it was subject to a fine for each day, after service, it failed to comply with the annual-testing requirement.

¶ 102   Defendant also notes that, during the hearing in which the court imposed the daily fines, the court recognized it had continued the case from time to time to allow the parties to explore a resolution, noting the parties and the court "were hoping there would be a way to resolve [the matter] without the necessity of fining the defendant." Relying on *City of Chicago v. Old Colony Partners, L.P.*, 364 Ill. App. 3d 806 (2006), defendant argues, "[e]ven if daily fines could be considered under the ordinance, it is both logically incongruous and highly prejudicial to the defendant to allot the parties time to consider alternative resolutions, but then fine the defendant for that same time period, and without notice prior to the date of trial."

¶ 103   *Old Colony* is inapposite. The issue in that case was whether the trial court's finding that the defendant had not violated a city ordinance was against the manifest weight of the evidence, not whether a daily fine could be imposed on the defendant. Admittedly, the appellate court found concerning the city's argument that a building owner could be fined while attempting to come into compliance with the ordinance, particularly where the building was a protected historic building

that required extra, time-consuming measures. *Id.* at 822. However, the court's comments on this point were *dicta*. In any event, section 109.4 of the Fire Prevention Code and section 1.15 of the Downers Grove Municipal Code *required* the court to impose a daily fine on defendant because defendant allowed the violation—the failure to submit the required report—to continue long after it was served with notice of the violation, and any attempt to attain compliance or resolve the matter is not a defense to the imposition of daily fines. See Ill. S. Ct. R. 579(a) (eff. Dec. 7, 2011) ("any fine imposed shall not be less than the 'minimum fine' authorized by ordinance"); *City of McHenry v. Suvada*, 396 Ill. App. 3d 971, 982 (2009); *City of Chicago v. Elevated Properties, L.L.C.*, 361 Ill. App. 3d 824, 835-36 (2005); *City of Chicago v. Cotton*, 356 Ill. App. 3d 1, 7 (2005).

¶ 104  Finally, though neither party raises it, we address the amount of the fine imposed on defendant. The trial court calculated the fine in this case by multiplying the minimum fine authorized by the ordinance by the number of days between the date the Village issued the citations (December 21, 2017) and the date of trial (October 29, 2018). The Village represented that 313 days elapsed between those two dates and, accordingly, the court imposed a fine of $23,475 (313 days times $75 per day). However, our calculation shows that only 312 days elapsed between the operative dates. Accordingly, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we reduce the fine to $23,400 (312 days times $75 per day).

¶ 105                                      E. Compliance

¶ 106  The Village raises one final argument on appeal. It asserts that, in its June 26, 2019, order, the trial court ordered defendant to comply with the annual-testing requirement and submit a report by October 31, 2019. The Village contends that ruling was never reconsidered or vacated and, therefore, defendant must still "comply by obtaining the inspections and submitting the required

report." It asks this court to "order the Defendant to come into compliance with the [Fire Prevention Code] within a reasonable time of the ruling handed down herein."

¶ 107   We reject this argument. In its June 26, 2019, order, the trial court did not order defendant to comply with the annual-testing requirement and submit a report. Rather, the order stayed the proceedings so that defendant could come into compliance and, thus, avoid a fine. Indeed, on June 26, 2019, after finding defendant guilty, the court stated, "I'm going to allow 120 days for compliance by [defendant]. I'm going to stay the imposition of any fine or penalty, and I'm going to waive any fines or costs if the building [*sic*] is, in fact, in compliance within 120 days." When defendant did not comply, the court lifted the stay and imposed an aggregate $1500 fine (which it later vacated and replaced with the daily fine).

¶ 108   Further, the Village raised this argument in its motion to reconsider the original fine, wherein it sought an order clarifying whether compliance had been stayed pending appeal. At the hearing on the motion to reconsider, the trial court found it had no authority to require compliance with the Fire Prevention Code and that, to obtain a court order requiring defendant to comply with the annual-testing requirement, the Village would have to seek injunctive relief in a different action. Thus, the court never ordered defendant to comply with the annual-testing requirement, and the Village's request that we order defendant to comply seeks relief it did not obtain in the trial court. Essentially, then, the Village's request is a cross-appeal, and, because the Village did not file a cross-appeal, we decline to order defendant to comply with the annual-testing requirement and file a report. See *Herron v. Anderson*, 254 Ill. App. 3d 365, 371 (1993).

¶ 109                                   III. CONCLUSION

¶ 110   For the reasons stated, we affirm as modified the judgment of the circuit court of Du Page County.

¶ 111   Affirmed as modified.

---

2022 IL App (2d) 210098

---

**Decision Under Review:**     Appeal from the Circuit Court of Du Page County, No. 17-OV-5177; the Hon. David E. Schwartz, Judge, presiding.

---

**Attorneys for Appellant:**     Robert G. Black, Law Offices of Robert G. Black, P.C., of Naperville, for appellant.

---

**Attorneys for Appellee:**     Dawn C. Didler, of Village of Downers Grove, of Downers Grove, for appellee.

---