2025 IL App (2d) 240589-U
No. 2-24-0589
Order filed September 25, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF ANTIOCH, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 23-OV-173 |
| | ) | 23-OV-174 |
| ANTHONY J. ASH, d/b/a Ash Pallet, Inc., | ) | |
| and Ash Property Management, | ) | Honorable |
| | ) | George T. Pappas, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) Defendant was personally liable for violations of fire-safety ordinances incurred by businesses that he operated and (2) the ordinances mandated fines regardless of whether the violations were remediated before trial.

¶ 2    Plaintiff, the Village of Antioch, charged defendant, Anthony J. Ash, doing business as Ash Pallet, Inc. and Ash Property Management, with 27 fire-safety ordinance violations at two properties. After a bench trial, the trial court found defendant guilty of 23 violations and fined him accordingly. On appeal, defendant contends that (1) because he did not own or occupy either property, he could not be held personally liable for the violations and, alternatively, (2) the trial

court abused its discretion in imposing fines for one of the properties, in view of the progress defendant made before trial in remedying the violations. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On appeal, defendant does not dispute the trial court's factual findings. We summarize only the facts necessary to frame the issues on appeal.

¶ 5     On January 25, 2023, in case No. 23-OV-173, plaintiff charged defendant with 10 violations (counts I through X) of the fire safety provisions of the Village of Antioch Municipal Code of Ordinances (Code of Ordinances), which incorporated in full the 2012 version of the International Fire Code (IFC). See Village of Antioch Municipal Code of Ordinances, ch. 3, § 9-1-1 (2025), https://codelibrary.amlegal.com/codes/antiochil/latest/antioch_il/0-0-0-6318 [https://perma.cc/U9WF-XFJ5] (last visited Sept. 3, 2025); Int'l Code Council, ICC DigitDigit. Codes, 2012 Int'l Fire Code, (Apr. 2014), https://codes.iccsafe.org/content/IFC2012 [https://perma.cc/3NJY-FVEM] (last visited Sept. 3, 2025). All the violations allegedly occurred on January 25, 2023, on the premises of Ash Pallet Management, Inc. (Ash Pallet) at 61 McMillen Road in Antioch.

¶ 6     On March 3, 2023, in case No. 23-OV-174, plaintiff charged defendant with 17 violations (counts XI through XVII)[1] of the IFC as adopted by the Code of Ordinances. All the violations allegedly occurred on February 6, 2023, on the premises of Ash Property Management, LLC (Ash Property) at 710 Anita Avenue in Antioch.

---

[1]For ease of reference, we have made the count numbers in case No. 23-OV-174 continuous with those in case No. 23-OV-173.

¶ 7    All 27 charges were brought by Antioch fire marshal Jeffrey Gibson and were based on (1) his inspections on the respective dates of the alleged violations and (2) several later inspections of Ash Pallet.

¶ 8    Defendant failed to appear or answer, and the trial court entered a default judgment against him on April 19, 2023. On August 9, 2023, the court held a prove-up hearing, at which it received testimony from Gibson and photographs from his inspections. The court entered judgment for a total of $136,200, finding that several violations had remained uncorrected after numerous inspections.

¶ 9    On August 30, 2023, defendant moved to vacate the default judgment. In his reply in support of that motion, defendant submitted documents from the Illinois Secretary of State. According to these documents, Ash Pallet was incorporated in 2012. As of April 3, 2023, defendant was Ash Pallet's president and secretary. As of April 10, 2023, defendant was Ash Property's manager.

¶ 10    On April 10, 2024, the trial court vacated the default judgment and set the matter for status.

¶ 11    On June 12, 2024, defendant filed a motion for summary judgment, to which he attached his affidavit. He averred as follows. He resided in Wisconsin. He was the manager of Ash Property and the president of Ash Pallet. Ash Pallet owned the property at 61 McMillen Road, and Ash Property owned the property at 710 Anita Avenue. Defendant did not "personally have possession of," "personally occupy," or own either property.

¶ 12    On July 22, 2024, the trial court denied the motion for summary judgment. On July 24 and 31, 2024, a bench trial was held. The court received photographic and documentary evidence and heard testimony from two witnesses: Gibson and Joseph Jardas. Gibson testified for plaintiff that defendant was Gibson's principal contact person for matters relating to fire-code enforcement and

that they routinely communicated by text and e-mail about code compliance and inspections. Gibson also testified: "When I met with [defendant] to do a first inspection he told me he was the owner, kind of how the business had started and grown and developed so for everything he was saying I assumed he was the owner and occupant of the building." Jardas testified for defendant that Ash Property and Ash Pallet hired him in October or November 2023 to remediate the noncompliance identified by the inspections. Jardas testified specifically about such remediation efforts.

¶ 13 In its findings, the trial court first rejected defendant's argument that he could not be held personally liable for any violations. The court explained that the IFC made the "owner or operator" personally liable for violations at a property and that Gibson had testified that defendant was his "contact person." The court added: "And perhaps the most telling thing is that after [Gibson] had contact with [defendant] and after they had conversations that things were corrected so [defendant] clearly was at a minimum the operator if not the owner."

¶ 14 The trial court found for plaintiff on all but four counts: count VI (Ash Pallet), XXIII (Ash Property), XXVI (Ash Property), and XXVII (Ash Property). The court noted that, per the IFC, each day a violation remains unremediated is a separate offense (Int'l Fire Code § 109.4). The court identified numerous dates on which violations persisted at Ash Pallet, but it found violations at Ash Property for only one date: February 6, 2023.

¶ 15 On September 23, 2024, the trial court held a sentencing hearing. In imposing the sentences, which were all fines, the court noted that, per the Code of Ordinances, the fine for a given offense must be between $50 and $750 (Antioch Municipal Code, ch. 3, § 1-3-1 (2025)).

¶ 16    The trial court fined defendant as follows for the Ash Pallet violations.  For each count as to which the trial court found a violation, we set forth the total separate offenses (*i.e.*, total days for each violation), the per-day fine, and the total penalty:

Count I: 1 day (January 25, 2023)                                        $500

Count II: 93 days (January 25 to April 28, 2023)                         $400 (total $37,200)

Count III: 93 days (January 25 to April 28, 2023)                        $300 (total $27,900)

Count IV: 1 day (January 25, 2023)                                       $400

Count V: 93 days (January 25 to April 28, 2023)                          $500 (total $46,500)

Count VII: 183 days (January 25 to July 27, 2023)                        $350 (total $64,050)

Count VIII: 183 days (January 25 to July 27, 2023)                       $450 (total $82,350)

Count IX: 72 days (January 25 to April 7, 2023)                          $150 (total $10,800)

Count X: 40 days (January 25 to March 6, 2023)                           $150 (total $6,000)

¶ 17    (We note that defendant's appellate challenge as to the single-day Ash Property fines[2] is narrower than his challenge to the Ash Pallet fines.  As to the Ash Property fines, defendant does not challenge the fines *per se*, but claims only that he was not personally liable for them.)

¶ 18    Defendant moved to reconsider the judgment.  The trial court denied the motion, and defendant timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, defendant raises two claims.  First, he contends that the trial court erred as a matter of law in holding him personally liable for violations at Ash Pallet and Ash Property, where

---

[2]The trial court fined defendant $150 for count XI; $250 for count XIV; $400 each for counts XV, XX, XXI, XXII, and XXV; and $500 each for counts XII, XIII, XVI, XVII, XVIII, XIX, XXIV, and XVII.

he did not own or occupy either property. Second, he contends that the trial court abused its discretion in issuing fines for the violations at Ash Pallet despite the progress made before trial in remedying the violations.

¶ 21 We consider defendant's argument that he cannot be held personally liable for any violations. Noting that a corporation or limited liability company is a legally distinct entity from its agents, and that he never personally owned or occupied either property, defendant argues that section 109.2 of the IFC did not allow the trial court to fine him personally for any of the violations. Plaintiff responds that the IFC, read as a whole, clearly authorized the court to hold defendant personally liable for the violations.

¶ 22 Defendant's claim requires us to construe the relevant provisions of the IFC as adopted by the Code of Ordinances. In construing municipal ordinances, courts follow the same principles that govern statutory construction. *Hill v. Joseph Behr & Sons, Inc.*, 293 Ill. App. 3d 814, 817 (1997). "The fundamental rule in interpreting an ordinance is to ascertain and give effect to the drafter's intent." *People v. Partin*, 2022 IL App (2d) 210445, ¶ 44. "The best indicator of that intent is the ordinance's language given its plain and ordinary meaning." *Id.* A court must view the statute (or ordinance) as a whole and not construe words and phrases in isolation. *People v. Jackson*, 2011 IL 110615, ¶ 12. Our review is *de novo*. *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 430 (2005).

¶ 23 Defendant relies entirely on section 109.2 of the IFC, which reads:

"Correction and abatement of violations of this code shall be the responsibility of the *owner*. If an occupant creates, or allows to be created, hazardous conditions in violation of this code, the occupant shall be held responsible for the abatement of such hazardous conditions." (Emphasis in original.) Int'l Fire Code § 109.2.

¶ 24     Relying exclusively on section 109.2, defendant reasons that, as he neither owned nor occupied either property, he could not be held liable for any of the violations that the trial court found. Defendant, however, reads section 109.2 in complete isolation from other provisions of the IFC, not the least important of which are those defining the term "owner."

"OWNER.  A corporation, firm, partnership, association, organization and any other group acting as a unit, or a person who has legal title to any structure or premises with or without accompanying actual possession thereof, *and shall include the duly authorized agent* \*\*\*." (Emphases added.) *Id.* § 202.

"AGENT.  *A person who shall have charge, care or control of any structure as owner*, or *agent of the owner*, \*\*\*.  Any such person representing the actual *owner* shall be bound to comply with the provisions of this code to the same extent as if that person was the *owner*." (Emphases in original and emphases added.) *Id.*

¶ 25     Insofar as the definition of "agent" is tautological, we turn to section 201.4 of the IFC, which states that terms that the IFC does not define "shall have ordinarily accepted meanings, such as the context implies. *Merriam Webster's Collegiate Dictionary, 11th Edition*, shall be considered as providing ordinarily accepted meanings." Int'l Fire Code § 201.4.  Thus, per section 201.4, an "agent" is defined as "one who is authorized to act for or in the place of another." *Agent*, Merriam-Webster Dictionary (11th ed. 2023). https://www.merriam-webster.com/dictionary/agent (last visited Sept. 3, 2025) [https://perma.cc/H73H-76CD].

¶ 26     Plainly, defendant was the "agent" of both Ash Pallet and Ash Property.  According to defendant's affidavit and documents from the secretary of state, he was the president and secretary of Ash Pallet and the manager of Ash Property.  Gibson gave undisputed testimony that defendant was the contact person for fire code issues and, based on his level of responsibility on compliance

matters, appeared to be "the owner and occupant." Citing Gibson's testimony, the trial court properly concluded that defendant was "at a minimum the operator if not the owner." As the entities' "agent"—at a minimum—defendant was, per section 109.2, an "owner" of both entities.

¶ 27 Moreover, in addition to section 109.2, section 109.1 of the IFC made defendant personally liable for all violations at either property:

"It shall be unlawful for a *person*, firm or corporation to erect, construct, alter, repair, remove, demolish or utilize a building, occupancy, premises or system regulated by this code, or *cause same to be done, in conflict with or in violation of any of the provisions of this code*." (Emphases added.) *Id.* § 109.1.

Gibson's unrebutted testimony that defendant had apparent operational control of the entities allowed the conclusion that defendant "caused" the violations of the IFC. Thus, sections 109.1 and 109.2 made defendant personally liable for the violations, and we reject defendant's first claim of error.

¶ 28 Defendant argues alternatively that the trial court abused its discretion in issuing fines for violations at Ash Pallet that had been remediated before trial. Defendant cites evidence of such remediation, but we need not detail it here, given our resolution of this issue. We stress that defendant does not contest that Ash Pallet violated the IFC on all dates for which the trial court imposed fines (relatedly, he does not contest that he received due notice of the violations). Defendant's argument, rather, is that the court erred in failing to consider evidence of remediation efforts *after* those violation dates. We reject that argument.

¶ 29 We start with section 109.4 of the IFC:

"Persons who shall violate a provision of this code or shall fail to comply with any of the requirements thereof *** *shall be guilty* of a [SPECIFY OFFENSE], punishable by a fine

of not more than [AMOUNT] dollars [here $750] ***. Each day that a violation continues after due notice has been served *shall be deemed a separate offense*." (Emphases added.) *Id.* § 109.4.

¶ 30     We note that section 109.4 requires not only that (1) every violation of the IFC be deemed an offense (of a class to be determined by legislation) but also that (2) each day a violation continues unremediated after due notice be deemed a separate offense. See *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001) (use of "shall" indicates a legislative intent to impose a mandatory obligation). We have previously noted the mandatory nature of section 109.4's language. See *Village of Downers Grove v. Village Square III Condominium Ass'n*, 2022 IL App (2d) 210098, ¶ 103 (construing section 109.4 as adopted by the plaintiff municipality). Under section 109.4, the trial court lacks discretion *not* to impose a fine for each day that a violation persists after due notice has been given.

¶ 31     Defendant's cited authorities do not persuade us otherwise. He relies on two opinions, *City of Chicago v. RN Realty, L.P.*, 357 Ill. App. 3d 337 (2005), and *Village of Glenview v. Ramaker*, 282 Ill. App. 3d 368 (1996). Both cases are distinguishable, and, as we have previously recognized (see *City of McHenry v. Suvada*, 396 Ill. App. 3d 971, 982-83 (2009)), their analyses are questionable in this context.

¶ 32     In *Ramaker*, the plaintiff village filed a complaint against the defendant, alleging that, by keeping a pet pig, she violated an ordinance that barred the keeping of " 'swine' " in the village. *Ramaker*, 282 Ill. App. 3d at 370 (quoting Glenview Municipal Code, § 4.7 (1959)). Before her case came to trial, she removed the pig from the village's boundaries. *Id.* The trial court found that she had violated the ordinance and fined her $500. *Id.* On appeal, the court affirmed the finding of guilt but, apparently acting *sua sponte*, vacated the fine, reasoning that, because the

defendant had complied with the ordinance, imposing a fine "would not aid enforcement." *Id.* at 372-73 (citing *Harris-Hub Co. v. Illinois Pollution Control Board*, 50 Ill. App. 3d 608, 612 (1977)). Notably, in reaching that conclusion, the court did not rely on what the applicable ordinance said about fines.

¶ 33    In *RN Realty*, the plaintiff municipality charged the defendant with several violations of the municipal building code. *RN Realty*, 357 Ill. App. 3d at 338-39. The trial court held for the defendant and refused to find any violations, reasoning that the defendant had speedily remedied all alleged violations and that the plaintiff had not proved that any "dangerous and hazardous" conditions had existed on the defendant's property. *Id.* at 343.

¶ 34    On appeal, the plaintiff argued in part that the defendant's eventual compliance was not a defense and that it was not required to prove that any of the violations were dangerous. *Id.* at 343-44. The appellate court affirmed but, as with the *Ramaker* court, did not examine the applicable code provisions on fines. Rather, the court relied simply on *Ramaker*, holding that, because the defendant had cooperated with the plaintiff and speedily complied with the code, fines would be improper. *Id.* at 348 (citing *Ramaker*, 282 Ill. App. 3d at 372). The court stressed that the defendant "undertook immediate and diligent efforts [to] cure all the defects prior to trial," such that "the imposition of fines would not have aided enforcement in this instance." *Id.*

¶ 35    *Ramaker* and *RN Realty* are distinguishable because neither dealt with the IFC and the clear requirements of section 109.4. As we noted in *Suvada*, both decisions went astray by failing to apply the language of the respective ordinances at issue. *Suvada*, 396 Ill. App. 3d at 982-83.

¶ 36    In *Suvada*, the plaintiff municipality charged the defendant homeowner with violations of ordinances that were enacted to ensure that residential property was safe and habitable. *Id.* at 972. The trial court entered a preliminary injunction barring occupancy until repairs were made. *Id.* at

975-76. A year later, the court found that the defendant was now in compliance with the ordinances. *Id.* at 977. The court refused to impose any fines for the previous violations. *Id.* at 978-79. On appeal, we agreed with the plaintiff that the refusal to impose any fines for violations was legally erroneous. *Id.* at 983-84. We explained that "the plain language of the penalty provisions at issue d[id] not excuse from fines those who violate the [ordinances] for a period of time yet subsequently comply." *Id.* at 983. We found *Ramaker* and *RN Realty* unpersuasive on the issue of whether fines were mandatory regardless of subsequent compliance. We noted that *Ramaker*'s vacatur of the fine was based not on the applicable penalty provision *in that case*, but on *Harris-Hub Co.*, 50 Ill. App. 3d at 611, which addressed an environmental-protection statutory provision that did not mandate the imposition of fines and, indeed, conditioned it on a showing that fines would aid in enforcing the law. *Suvada*, 396 Ill. App. 3d at 982-83 (citing *Ramaker*, 282 Ill. App. 3d at 372-73). Thus, *Ramaker*'s reasoning was "questionable at best." *Id.* at 983. We note that *RN Realty* also disregarded the plain language of the applicable ordinance, which, like the ordinances at issue in *Suvada*, did not permit excusing violations because of subsequent compliance. *Id.* (citing *RN Realty*, 357 Ill. App. 3d at 348). We rejected the defendant's attempt to rely on *Ramaker* and *RN Realty* for the general proposition that, where the violation is cured before trial, a fine should not be imposed, because the violator's behavior has already changed and a fine would have no enforcement purpose.

¶ 37     We note that, in *Village Square III Condominium Ass'n*, 2022 IL App (2d) 210098, ¶ 103, we affirmed *Suvada*'s approach in that we examined the applicable ordinance (which adopted section 109.4 of the IFC) to determine whether the trial court erred in imposing a separate fine for each day the defendant violated the ordinance. We concluded that the ordinance

"*required* the court to impose a daily fine on [the] defendant because [the] defendant allowed the violation \*\*\* to continue long after it was served with notice of the violation, and any attempt to attain compliance or resolve the matter [was] not a defense to the imposition of daily fines." (Emphasis in original.) *Id.*

¶ 38 We adhere to the approach of *Village Square III Condominium Ass'n* and *Suvada* and consult the governing provision to determine the legality of the fines. Consistent with our interpretation of section 109.4 in *Village Square III Condominium Ass'n*, we hold that the trial court here was *required* to impose fines for all violations, notwithstanding defendant's later compliance. Therefore, we reject defendant's second claim of error.

¶ 39                               III. CONCLUSION

¶ 40 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 41 Affirmed.